**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NILS HENNINGER, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| ZYNGA INC., MARK PINCUS, FRANK GIBEAU, REGINA E. DUGAN, WILLIAM GORDON, LOUIS J. LAVIGNE JR., CAROL G. MILLS, JANICE M. ROBERTS, ELLEN F. SIMINOFF, and NOEL WATSON, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Nils Henninger ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.    Plaintiff brings this stockholder action against Zynga Inc.("Zynga" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), and collectively with the Company and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Take-Two Interactive Software, Inc. ("Parent" or "Take-Two") via a transaction involving Zebra MS I, Inc and Zebra MS II, Inc. ("Merger Subs"), as well

as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.  The terms of the Proposed Transaction were memorialized in a January 9, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Zynga will become an indirect wholly-owned subsidiary of Take-Two. Zynga public stockholders will receive, in exchange for each share of Zynga stock, Merger consideration which is dependent upon the closing price of Take-Two stock on the closing of the deal. Shareholders of Zynga also will receive $3.50 per share in cash and approximately $6.36 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the Proposed Transaction, for a total merger consideration value of approximately $9.86 in cash and stock.

3.  Thereafter, on March 14, 2022, Take-Two filed a Registration Statement on Form S-4 attaching the registration statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.  The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.  In violation of the Exchange Act Defendants caused to be filed the materially deficient Registration Statement on March 14, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information

1   concerning, among other things: (a) the sales process and in particular certain conflicts of interest

2   for management; (b) the financial projections for Zynga and Take-Two, provided by Zynga and

3   Take-Two management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC

4   ("Goldman Sachs") and Take-Two's financial advisors J.P. Morgan Securities LLC, Inc. ("J.P.

5   Morgan") and LionTree Advisors, LLC ("LionTree"), and (c) the data and inputs underlying the

6   financial valuation analyses, if any, that purport to support the fairness opinions created by

7   Goldman Sachs and J.P. Morgan, if any, and provide to the Company and the Board.

8         6.    Absent judicial intervention, the Proposed Transaction will be consummated,

9   resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

10                                            **PARTIES**

11        7.    Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a

12  Zynga stockholder.

13        8.    Defendant Zynga provides social game services in the United States and

14  internationally. Zynga is incorporated under the laws of the State of Delaware and has its principal

15  place of business at 699 Eighth Street, San Francisco, CA 94103.  Shares of Zynga common stock

16  are traded on the NasdaqGS under the symbol "ZNGA".

17        9.    Defendant Mark Pincus ("Pincus") has been a Director of the Company at all

18  relevant times.  In addition, Pincus serves as the Chairman of the Board.

19        10.    Defendant Frank Gibeau ("Gibeau") has been a director of the Company at all

20  relevant times.  In addition, Gibeau serves as the company's Chief Executive Officer ("CEO").

21        11.    Defendant Regina E. Dugan ("Dugan") has been a director of the Company at

22  all relevant times.  In addition, Friedberg is the Company's Founder.

23        12.    Defendant William Gordon ("Gordon") has been a director of the Company at all

24  relevant times.

25        13.    Defendant Louis J. Lavigne Jr. ("Lavigne") has been a director of the Company at

26  all relevant times.

27

28

14.     Defendant Carol G. Mills ("Mills") has been a director of the Company at all relevant times.

15.     Defendant Janice M. Roberts ("Roberts") has been a director of the Company at all relevant times.

16.     Defendant Ellen F. Siminoff ("Siminoff") has been a director of the Company at all relevant times.

17.     Defendant Noel Watson ("Watson") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.     Defendant Take-Two Interactive Software, Inc. develops, publishes, and markets interactive entertainment solutions for consumers worldwide. Parent was founded in 1993 and is headquartered in New York, NY. Shares of Parent common stock are traded on the New York Stock Exchange under the symbol "TTWO".

20.     Defendants Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Zynga maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.     Zynga Inc. provides social game services in the United States and internationally. The company develops, markets, and operates social games as live services played on mobile platforms, such as Apple iOS and Google's Android operating systems; social networking platforms, such as Facebook and Snapchat; and personal computers consoles, such as Nintendo's Switch game console, and other platforms and consoles. It also provides advertising services comprising mobile advertisements, engagement advertisements and offers, and branded virtual items and sponsorships for marketers and advertisers; and licenses its own brands. Zynga Inc. was founded in 2007 and is headquartered in San Francisco, California.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 8, 2021 Press Release announcing its 2021 Q3 financial results, the Company announced that it was on Track to Finish 2021 with Zynga's Best-Ever Annual Topline Performance and Largest Audience in Company History.

26.     Speaking on these positive results, CEO Defendant Gibeau commented on the Company's positive results as follows, "We delivered strong quarterly results ahead of guidance, including record Q3 revenue and bookings primarily driven by another standout quarter from Rollic's hyper-casual portfolio." Gibeau continued "Today, we are raising our full year 2021 guidance and are on track to finish the year with Zynga's best-ever annual topline performance and the largest mobile audience in the company's history. We are well positioned for 2022 and beyond with multiple growth catalysts in place to drive our continued expansion."

27.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Zynga.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Zynga to enter into the Proposed Transaction without providing requisite information to Zynga stockholders such as Plaintiff.

**The Flawed Sales Process**

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Notably, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Take-Two, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner

**The Proposed Transaction**

32.     On January 10, 2022, Zynga and Take-Two issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**NEW YORK & SAN FRANCISCO--(BUSINESS WIRE)**--Jan. 10, 2022-- Take-Two Interactive (NASDAQ: TTWO) (the "Company") and Zynga (NASDAQ: ZNGA), two leaders in interactive and mobile entertainment, today announced that they have entered into a definitive agreement, under which Take-Two will acquire all of the outstanding shares of Zynga in a cash and stock transaction valued at $9.861 per Zynga share, based on the market close as of January 7, 2022, with a total enterprise value of approximately $12.7 billion. Under the terms and subject to the conditions of the agreement, Zynga stockholders will

receive $3.50 in cash and $6.361 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the transaction. The purchase price represents a premium of 64% to Zynga's closing share price on January 7, 2022.

This transformative combination unifies two global leaders in the interactive entertainment business and establishes Take-Two as one of the largest and most diversified mobile game publishers in the industry, with $6.1 billion in pro-forma Net Bookings for the trailing twelve-month period ended September 30, 2021.

Both companies have created and expanded iconic franchises, which will combine to form one of the largest and most diverse portfolios of intellectual properties in the sector. Take-Two's labels are home to some of the most beloved series in the world, including Grand Theft Auto®, Red Dead Redemption®, Midnight Club®, NBA 2K®, BioShock®, Borderlands®, Civilization®, Mafia®, and Kerbal Space Program®, while Zynga's portfolio includes renowned titles, such as CSR Racing™, Empires & Puzzles™, FarmVille™, Golf Rival™, Hair Challenge™, Harry Potter: Puzzles & Spells™, High Heels! ™, Merge Dragons!™, Toon Blast™, Toy Blast™, Words With Friends™, and Zynga Poker™.

### *Management Comments*

"We are thrilled to announce our transformative transaction with Zynga, which significantly diversifies our business and establishes our leadership position in mobile, the fastest growing segment of the interactive entertainment industry," said Strauss Zelnick, Chairman and CEO of Take-Two. "This strategic combination brings together our best-in-class console and PC franchises, with a market-leading, diversified mobile publishing platform that has a rich history of innovation and creativity. Zynga also has a highly talented and deeply experienced team, and we look forward to welcoming them into the Take-Two family in the coming months. As we combine our complementary businesses and operate at a much larger scale, we believe that we will deliver significant value to both sets of stockholders, including $100 million of annual cost synergies within the first two years post-closing and at least $500 million of annual Net Bookings opportunities over time."

"Combining Zynga's expertise in mobile and next-generation platforms with Take-Two's best-in-class capabilities and intellectual property will enable us to further advance our mission to connect the world through games while achieving significant growth and synergies together," said Frank Gibeau, CEO of Zynga. "I am proud of our team's hard work to deliver a strong finish to 2021, with one of the best performances in Zynga's history. We are incredibly excited to have found a partner in Take-Two that shares our commitment to investing in our players, amplifying our creative culture, and generating more value for stockholders. With this transformative transaction, we begin a new journey which will allow us to create even better games, reach larger audiences and achieve significant growth as a leader in the next era of gaming."

***Strategic Rationale and Stockholder Value Creation***

With Zynga's stockholders receiving approximately 64.5%[1] of the transaction consideration in Take-Two stock, both groups of stockholders will benefit from the combined company's greater scale, enhanced financial profile, and the synergies created through the transaction.

**Combined company is well-positioned to capitalize on the interactive entertainment industry's strong tailwinds, including a leadership position in mobile**. The video game sector has experienced rapid growth over the last few years and is now the largest vertical in the entertainment industry[2]. Mobile gaming is the fastest growing segment within the industry, with an estimated $136 billion[2] in gross bookings in 2021, and an expected compound annual growth rate of 8%[2] over the next three years. The transaction is expected to establish Take-Two as a leader in mobile gaming, with mobile expected to comprise over 50% of its Net Bookings in Fiscal Year 2023 (as compared to an estimated 12% in Fiscal Year 2022). The transaction will bolster Take-Two's mobile offerings, which include popular games such as Dragon City, Monster Legends, Top Eleven, Two Dots, and WWE SuperCard, and consist of a diverse array of titles that focus on many of the most popular genres in mobile gaming, including casual, hyper-casual, lifestyle, mid-core, puzzle, social casino and sports games.

**Formation of an industry-leading portfolio, comprising Take-Two's best-in-class intellectual properties and Zynga's renowned mobile titles.** The transaction will create a powerful and diverse portfolio of industry-leading titles that span key platforms and genres across interactive entertainment, developed by some of the most creative and forward-thinking talent within the industry. By sharing best practices and key data insights across the enterprise, the Company is expected to benefit from significant development and publishing synergies, unlock new revenue streams and reach new audiences around the world.

**The combined entity has significantly greater scale**, with $6.1 billion in Net Bookings, and $769 million[3] in Adjusted Unrestricted Operating Cash Flow on a pro-forma basis for the trailing twelve-month period ended September 30, 2021. Looking ahead, the combined company is expected to deliver a 14%[4] compound annual growth rate for Net Bookings (excluding the annual Net Bookings opportunities and any future acquisitions) over the three-year period from Take-Two's Fiscal Years 2021 through 2024.

**Addition of Zynga's mobile titles will expand the Company's base of Recurrent Consumer Spending ("RCS")**. Through the addition of Zynga's mobile business, particularly its diversified portfolio of live services and upcoming pipeline of new releases, Take-Two will increase its sources of RCS, a highly-attractive revenue stream that helps reduce volatility across reporting periods that

has historically been driven by the cadence of Take-Two's console and PC release slate.

**Take-Two has also identified over $500 million of incremental annual Net Bookings opportunities to unlock over time, driven by:**

**Creation of new mobile games for many of the iconic franchises within Take-Two's portfolio of intellectual property**. Take-Two has an extensive catalog of commercially and critically successful console and PC titles with engaged and loyal communities of players, and there is a meaningful opportunity to create mobile games and new cross-platform experiences for many of these properties. Zynga's nearly 3,000 employees include highly-talented mobile developers, paving the way for Take-Two to accelerate this strategic initiative and introduce its iconic intellectual properties across the fastest-growing platform in the industry.

**Ability to optimize RCS by leveraging the collective knowledge across both companies.** Both Take-Two and Zynga have extensive capabilities to engage players through live operations ("LiveOps") and RCS initiatives. By combining resources and proven acumen, the teams at Take-Two and Zynga will deploy best-in-class practices throughout the organization to enhance and grow existing titles across the portfolio. Key opportunities include cross-marketing through a larger, shared customer database and improving game economies through more effective data analytics and machine learning models.

**Other strategic benefits** include the use of Zynga's Chartboost advertising platform, which will improve new user acquisition through better audience targeting and optimize mobile advertising inventory to achieve greater yields; geographic expansion into growth markets across Asia, including India, and the Middle East, among other regions; and an enhanced focus on technological innovation and new business models that will utilize the collective knowledge of forward-thinking talent.

**Take-Two expects approximately $100 million of annual cost synergies** within the first two years after closing, primarily driven by the rationalization of duplicative overhead including corporate general and administrative expenses and public company costs, as well as the benefit of scale efficiencies across the enterprise.

**The acquisition is structured to maintain a strong balance sheet**, including significant annual cash generation. The combined company's strategic and financial flexibility is expected to be greater than each company on a standalone basis, providing Take-Two with the financial resources to continue to invest in talent, development, and innovation, while also pursuing select inorganic growth opportunities.

COMPLAINT

1

2 ***Potential Conflicts of Interest***

3    33.    The breakdown of the benefits of the deal indicate that Zynga insiders are the

4 primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as

5 Plaintiff. The Board and the Company's executive officers are conflicted because they will have

6 secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as

7 a public stockholder of Zynga.

8    34.    Notably, Company insiders, currently own large, illiquid portions of Company

9 stock which will be exchanged for the merger consideration upon the consummation of the

10 Proposed Transaction.   However, while the Registration Statement provides the following

11 information, it fails to disclose an accounting of how much merger consideration will be afforded

12 to Company insiders as a consequence of the consummation of the Proposed Transaction and the

13 cashing out of these amounts:

14 **Security Ownership of Zynga Directors and Executive Officers**

15

| Named Executive Officers and Directors: | Shares Beneficially Owned | Ownership % |
|---|---|---|
| Mark Pincus (1) | 56,293,199 | 5.0% |
| Frank D. Gibeau (2) | 9,828,796 | * |
| James Gerard Griffin (3) | 4,549,152 | * |
| Bernard Kim (4) | 7,530,699 | * |
| William "Bing" Gordon (5) | 1,313,365 | * |
| Phuong Y. Phillips (6) | 1,333,913 | * |
| Matthew S. Bromberg (7) | 1,204,084 | * |
| Louis J. Lavigne, Jr. (8) | 356,017 | * |
| Dr. Regina E. Dugan (9) | 228,498 | * |
| Carol G. Mills (10) | 228,324 | * |
| Janice M. Roberts (11) | 228,324 | * |
| Ellen F. Siminoff (12) | 215,024 | * |
| Noel B. Watson, Jr. (13) | 35,309 | * |
| **All directors and executive officers as a group (15 persons) (14)** | **83,985,706** | **7.2%** |

24    35.    Additionally, Company insiders also own large amounts of company options,

25 restricted stock units, and other equity awards, all of which will be exchanged for the merger

26 consideration upon the consummation of the Proposed Transaction.   However, despite this, the

Registration Statement fails to provide an accounting of these amounts of equity awards or an accounting of the amount of consideration they will be exchanged for.

36.     Moreover, certain employment agreements with certain Zynga executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($)(1)(2)(3) | Equity ($)(4) | Perquisites / Benefits ($)(5) | Total ($)(6) |
|---|---|---|---|---|
| Frank Gibeau | 5,620,548 | 30,695,422 | 41,236 | 36,357,205 |
| James Gerard Griffin | 1,127,490 | 14,632,740 | — | 15,760,230 |
| Bernard Kim | 1,127,490 | 14,294,736 | — | 15,422,226 |
| Phuong Y. Phillips | 876,240 | 4,057,754 | — | 4,933,994 |
| Jeff Ryan | 797,490 | 3,493,273 | — | 4,290,763 |
| Matthew S. Bromberg (7) | — | — | — | — |

37.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Zynga, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

39.     On March 14, 2022, the Zynga Board and Take-Two caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

1    and/or provides materially misleading information critical to the total mix of information available
2    to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

3        *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*
4        *to the Proposed Transaction*

5        40.    Specifically, the Registration Statement fails to disclose material information
6    concerning the process conducted by the Company and the events leading up to the Proposed
7    Transaction.  In particular, the Registration Statement fails to disclose:

8        a.    Whether the confidentiality agreements entered into by the Company with
9              Take-Two differed from any other unnamed confidentiality agreement entered
10             into between the Company and potentially interested third parties (if any), and
11             if so, in all specific manners;

12       b.    All specific conditions under which any standstill provision contained in any
13             entered confidentiality agreement entered into between the Company and
14             potentially interested third parties throughout the sales process, including Take-
15             Two, would fall away; and

16       c.    Communications   regarding   post-transaction   employment   during   the
17             negotiation of the underlying transaction must be disclosed to stockholders.
18             Communications   regarding   post-transaction   employment   during   the
19             negotiation of the underlying transaction must be disclosed to stockholders.
20             This information is necessary for stockholders to understand potential conflicts
21             of interest of management and the Board, as that information provides
22             illumination concerning motivations that would prevent fiduciaries from acting
23             solely in the best interests of Plaintiff and Company stockholders.

24       *Omissions and/or Material Misrepresentations Concerning Zynga's Financial Projections*

25       41.    The Registration Statement fails to provide material information concerning
26   financial projections for Zynga provided by Zynga management to the Board, Goldman Sachs, J.P.
27   Morgan, and LionTree and relied upon by Goldman Sachs, J.P. Morgan and LionTree in their

28

analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.   Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that Zynga management provided to the Board, Goldman Sachs, and Citi.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

43.   With regard to the *Zynga standalone projections as of October 2021* prepared by Zynga Management, the Registration Statement fails to disclose material line items for the following metrics:

a.   Bookings, including all underlying necessary metrics, adjustments, and assumptions, including specifically: revenue, the change in deferred revenue, and all other specific adjustments made during the period; and

b.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific definition used and underlying metrics and the specific adjustments made to exclude the impact of the change in deferred revenue, stock-based compensation expense, acquisition-related transaction expenses, contingent consideration fair value adjustments and expenses incurred from vacated leases (which includes impairment charges recognized), provisions for or benefits from income taxes, other income (expense) net (which includes foreign exchange and asset disposition gains and losses, interest expense and interest income) and depreciation and amortization of tangible and intangible assets.

44.     With regard to the *Zynga standalone projections as of December 2021* prepared by Zynga Management, the Registration Statement fails to disclose material line items for the following metrics:

      a.  Bookings, including all underlying necessary metrics, adjustments, and assumptions, including specifically: revenue, the change in deferred revenue, and all other specific adjustments made during the period;

      b.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific definition used and underlying metrics and the specific adjustments made to exclude the impact of the change in deferred revenue, stock-based compensation expense, acquisition-related transaction expenses, contingent consideration fair value adjustments and expenses incurred from vacated leases (which includes impairment charges recognized), provisions for or benefits from income taxes, other income (expense) net (which includes foreign exchange and asset disposition gains and losses, interest expense and interest income) and depreciation and amortization of tangible and intangible assets; and

      c.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific adjustments made to exclude cash taxes, stock-based compensation, capital expenditures, changes in net working capital, remaining contingency payments.

45.     With regard to the *combined company projections* prepared by Zynga Management, the Registration Statement fails to disclose material line items for the following metrics:

      a.  Bookings, including all underlying necessary metrics, adjustments, and assumptions, including specifically: revenue, the change in deferred revenue, and all other specific adjustments made during the period;

      b.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific definition used and

underlying metrics and the specific adjustments made to exclude the impact of the change in deferred revenue, stock-based compensation expense, acquisition-related transaction expenses, contingent consideration fair value adjustments and expenses incurred from vacated leases (which includes impairment charges recognized), provisions for or benefits from income taxes, other income (expense) net (which includes foreign exchange and asset disposition gains and losses, interest expense and interest income) and depreciation and amortization of tangible and intangible assets; and

c.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific adjustments made to exclude cash taxes, stock-based compensation, capital expenditures, changes in net working capital, remaining contingency payments, and the specific inputs and assumptions used to determine the use of $50 million in restructuring costs.

46.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs, J.P. Morgan, or LionTree's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Take-Two's Financial Projections*

49.     The Registration Statement fails to provide material information concerning financial projections for Take-Two provided by Take-Two management to the Board, Goldman Sachs, J.P. Morgan, and LionTree and relied upon by Goldman Sachs, J.P. Morgan and LionTree in their analyses.    The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

50.     Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that Take-Two management provided to the Board, Goldman Sachs, and Citi.  Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

51.     With regard to the *Take-Two standalone projections* prepared by Take-Two Management, the Registration Statement fails to disclose material line items for the following metrics:

> a.  Net Bookings, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net amount of products and services sold digitally or sold-in physically during the period, licensing fees, merchandise, in-game advertising, strategy guides and publisher incentives;
>
> b.  Adjusted Net Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: GAAP net income and the specific adjustments made to exclude the net effect from deferred net revenue and related costs of goods sold, stock-based compensation, impact of business reorganization, amortization and impairment of acquired intangibles, business acquisition costs and one-time gains or losses on long-term investments;
>
> c.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: GAAP net income and the specific

adjustments made to exclude the net effect from deferred net revenue and related costs of goods sold, stock-based compensation, impact of business reorganization, amortization and impairment of acquired intangibles, business acquisition costs, one-time gains or losses on long-term investments, interest, depreciation, and tax expenses;

  d. Adjusted Unrestricted Operating Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: GAAP net cash from operating activities, and the specific adjustments made for changes in restricted cash; and

  e. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: cash taxes, capital expenditures, changes in net working capital, remaining contingency payments.

52. With regard to the *synergy projections* prepared by Take-Two Management, the Registration Statement fails to disclose material line items for the following metrics:

  a. Annual Net Bookings Opportunities, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net amount of products and services sold digitally or sold-in physically during the period, licensing fees, merchandise, in-game advertising, strategy guides and publisher incentives;

  b. Operating Contribution from Net Bookings Opportunities, including all underlying necessary metrics, adjustments, and assumptions, including specifically: GAAP net income from Net Bookings Opportunities and the specific adjustments made to exclude the net effect from deferred net revenue and related costs of goods sold, stock-based compensation, impact of business reorganization, amortization and impairment of acquired intangibles, business acquisition costs, one-time gains or losses on long-term investments, interest, depreciation, and tax expenses.

53.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate Take-Two's true worth (and thus the true worth of the Merger Consideration), the accuracy of Goldman Sachs, J.P. Morgan, or LionTree's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

56.     In the Registration Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57.     With respect to the *Illustrative Present Value of Future Share Price Analysis – Zynga Standalone*, the Registration Statement fails to disclose the following:

    a.   The specific illustrative implied future enterprise values of the implied future enterprise value of Zynga as of December 31, 2023 and 2024 calculated;

    b.   The specific inputs and assumptions used to determine the utilized one year forward EBTIDA estimates multiples of 10.0x to 15.0x;

    c.   NTM EBITDA for Zynga over the 1-month, 3-month, 6-month, 1-year, 2-year, 3-year and 5-year periods prior to January 7, 2022;

d.  The multiple of enterprise value to NTM EBITDA of Zynga as of January 7, 2022;

e.  Zynga's estimated net debt (defined as gross financial debt less cash) as of December 31, 2023 and 2024, respectively;

f.  Zynga's estimated number of projected fully diluted shares outstanding as of December 31, 2023 and 2024, respectively;

g.  The specific inputs and assumptions used to determine the utilized illustrative discount rate of 7.0%;

h.  Zynga's estimated cost of equity utilized;

i.  The beta for Zynga utilized; and

j.  The specific "certain financial metrics for the United States financial markets generally" utilized.

58.  With respect to the *Illustrative Pro Forma Present Value of Future Share Price Analysis—Combined Company*, the Registration Statement fails to disclose the following

a.  The specific illustrative implied future equity values per share of Take-Two pro forma for the combination as of March 31 for each of its fiscal years 2023 and 2024 calculated;

b.  The specific inputs and assumptions used to determine the utilized forward EV/EBITDA multiples of 15.0x to 20.0x;

c.  NTM EBITDA for both Zynga and Take-Two over the 1-month, 3-month, 6-month, 1-year, 2-year, 3-year and 5-year periods prior to January 7, 2022;

d.  Themultiple of enterprise value to NTM EBITDA of both Zynga and Take-Two as of January 7, 2022;

e.  The estimated net debt of the combined company as of March 31, 2023 and 2024, respectively;

f.  The number of estimated shares of the pro forma combined company outstanding as of March 31, 2023 and 2024;

g.  The specific inputs and assumptions used to determine the utilized illustrative discount rate of 6.0%;

h.  The pro forma combined company's estimated cost of equity utilized;

i.  The beta for the pro forma combined company utilized; and

j.  The specific "certain financial metrics for the United States financial markets generally" utilized

59.  With respect to the *Illustrative Discounted Cash Flow Analysis – Zynga Standalone*, the Registration Statement fails to disclose the following:

a.  The specific inputs and assumptions used to determine the utilized discount rate range of 6.0% to 8.0%;

b.  Zynga's weighted average cost of capital utilized;

c.  The range of illustrative terminal values for Zynga calculated;

d.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.50% to 2.50%;

e.  The specific inputs and assumptions used to determine the utilized implied exit terminal year last-twelve month ("LTM") EBITDA multiples ranging from 8.9x to 16.8x;

f.  Zynga's net debt as of September 30, 2021;

g.  The range of illustrative equity values for Zynga calculated; and

h.  The number of fully-diluted shares of Zynga common stock outstanding.

60.  With respect to the *Illustrative Discounted Cash Flow Analysis – Combined Company*, the Registration Statement fails to disclose the following:

a.  The specific inputs and assumptions used to determine the utilized discount rate range of 5.0% to 7.0%;

b.  The pro forma combined company's weighted average cost of capital utilized;

c.  The range of illustrative terminal values for pro forma combined company calculated;

    d.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.50% to 2.50%;

    e.   The range of illustrative equity values for the pro forma combined company calculated; and

    f.   The number of fully-diluted shares of the pro forma combined company common stock outstanding

61.    With respect to the *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized reference range of illustrative EV/EBITDA multiples of 10.0x to 15.0x;

    b.   The specific dates on which each precedent transaction closed; and

    c.   The value of each precedent transaction.

62.    With respect to the *Premia Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific metrics for each transaction analyzed.

63.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zynga stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan and LionTree*

65.     In the Registration Statement, J.P. Morgan and LionTree describe their fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

66.     As an initial matter the Registration Statement fails to indicate which of the analyses were performed by J.P. Morgan and which were performed by LionTree, or if both contributed to each analysis the specific manner and method in which each advisor contributed.

67.     With respect to the *Public Trading Multiples Analysis*, the Registration Statement fails to disclose the following:

    a.   For Zynga

        i.   The specific metrics for each comparable company;

        ii.  The specific inputs and assumptions used to determine the utilized EV/FY2023E Adjusted EBITDA multiple reference range of 9.5x to 10.5x;

        iii. The specific inputs and assumptions used to determine the utilized EV/FY2024E Adjusted EBITDA multiple reference range of 8.5x to 9.5x;

    b.   For Take-Two

        i.   The specific metrics for each comparable company;

        ii.  The specific inputs and assumptions used to determine the utilized EV/FY2024E Adjusted EBITDA multiple reference range of 9.5x to 15.5x; and

        iii. The specific inputs and assumptions used to determine the utilized Forward P/FY2024E Adjusted Earnings Per Share multiple reference range of 14.5x to 21.5x.

68.    With respect to the *Transaction Multiples Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific metrics for each transaction analyzed;

    b.   The specific inputs and assumptions used to determine the utilized EV/LTM Adjusted EBITDA multiple reference range of 10.0x to 30.0x;

    c.   The date on which each transaction analyzed closed; and

    d.   The value of each transaction analyzed.

69.    With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.   For Zynga

        i.    The range of implied terminal values for Zynga calculated;

        ii.   The specific inputs and assumptions used to determine the utilized perpetuity growth rates of 1.50% to 2.50%;

        iii.  The specific inputs and assumptions used to determine the utilized discount rates of 6.50% to 7.50%; and

        iv.   Zynga's weighted average cost of capital;

    b.   For Take-Two

        i.    The range of implied terminal values for Take-Two calculated;

        ii.   The specific inputs and assumptions used to determine the utilized perpetuity growth rates of 2.50% to 3.50%;

        iii.  The specific inputs and assumptions used to determine the utilized discount rates of 6.50% to 7.50%; and

        iv.   Zynga's weighted average cost of capital.

70.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

71.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zynga stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

74.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

75.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

1    in any earlier communication with respect to the solicitation of a proxy for the same

2    meeting or subject matter which has become false or misleading.

3    76.    The Registration Statement was prepared in violation of Section 14(a) because it is

4    materially misleading in numerous respects and omits material facts, including those set forth

5    above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

6    the Registration Statement is materially misleading and omits material facts that are necessary to

7    render them non-misleading.

8    77.    The Individual Defendants had actual knowledge or should have known of the

9    misrepresentations and omissions of material facts set forth herein.

10    78.    The Individual Defendants were at least negligent in filing a Registration Statement

11    that was materially misleading and/or omitted material facts necessary to make the Registration

12    Statement not misleading.

13    79.    The misrepresentations and omissions in the Registration Statement are material to

14    Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

15    favor of the Proposed Transaction on the basis of complete information if such misrepresentations

16    and omissions are not corrected prior to the vote regarding the Proposed Transaction.

17    **SECOND COUNT**

18    **Violations of Section 20(a) of the Exchange Act**

19    **(Against all Individual Defendants)**

20    80.    Plaintiff repeats all previous allegations as if set forth in full herein.

21    81.    The Individual Defendants were privy to non-public information concerning the

22    Company and its business and operations via access to internal corporate documents, conversations

23    and connections with other corporate officers and employees, attendance at management and

24    Board meetings and committees thereof and via reports and other information provided to them in

25    connection therewith.  Because of their possession of such information, the Individual Defendants

26    knew or should have known that the Registration Statement was materially misleading to Plaintiff

27    in his capacity as a Company stockholder.

28

82.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

83.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zynga's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

84.     The Individual Defendants acted as controlling persons of Zynga within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zynga to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Zynga and all of its employees.  As alleged above, Zynga is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

COMPLAINT

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 16, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*